(No. 11157.—Judgment affirmed.)

THE PEOPLE *ex rel.* The State Board of Agriculture, Appellant, *vs.* JAMES J. BRADY *et al.* Appellees.

*Opinion filed February 21, 1917.*

1. CONSTITUTIONAL LAW—*the State Auditor is the official examiner of accounts and claims against the State.* The duty to determine whether a particular claim constitutes an obligation against the State is implied by the title of the office of the Auditor of Public Accounts, and it is only when the Auditor draws his warrant for what he finds to be a proper charge against the State that it can be paid by the State Treasurer.

2. SAME—*legislature cannot deprive Auditor of the power to audit claims and charges against the State.* It is not within the power of the General Assembly to deprive the Auditor of Public Accounts of the power conferred upon him by the constitution to audit claims and charges against the State created in pursuance of an appropriation made by law.

3. SAME—*members of State Board of Agriculture are not State officers.* The members of the State Board of Agriculture are not officers of the State and have no powers or functions as officers.

4. SAME—*how appropriation may be lawfully paid out of State treasury.* An appropriation for a particular purpose can be lawfully paid out of the State treasury only on the presentation of itemized vouchers showing that obligations have been incurred for the particular purpose specified in the appropriation.

5. SAME—*legislature must determine for what purposes money shall be appropriated.* The General Assembly must determine to what objects and purposes money of the State shall be appropriated, and it cannot bestow power upon any person or board for the exercise of the discretion of the donee in that respect.

6. SAME—*when gross amount appropriated cannot be regarded as a single item.* A bill appropriating to the State Board of Agriculture the sum of $153,150, "to be used as follows," following which is a specification of some forty-four separate purposes, opposite each of which a specific amount is set down, cannot be regarded as merely appropriating the gross amount as a single item, which the Governor must approve or veto as a whole, but the amount set down for each purpose specified must be treated as a separate item of the appropriation.

7. SAME—*Governor may veto particular items in an appropriation.* The constitution provides that bills making appropriations

shall appropriate to the specified objects, respectively, their several amounts in distinct items and sections, and the Governor has power to veto particular items in such a bill and the items vetoed will not become a part of the law.

8. WORDS AND PHRASES—*meaning of the word "item."* The word "item" is in common use, and means a separate entry in an account or a schedule, or a separate particular in an enumeration of a total which is separate and distinct from the other particulars or entries.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

SIDNEY S. BREESE, for appellant.

P. J. LUCEY, Attorney General, and A. R. ROY, (LOGAN HAY, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Forty-ninth General Assembly passed an act as follows:

"An act making an appropriation in aid of the State Board of Agriculture, the State Bee-Keepers' Association, the Illinois Dairymen's Association, the Illinois State Poultry Association, the Illinois Live Stock Breeders' Association, the Illinois State Academy of Science, and the Illinois State Horticultural Society.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That the following named sums, or so much thereof as may be necessary respectively for the purposes hereinafter named, be and are hereby appropriated to the boards, societies and associations following, to-wit:

"(A) To the State Board of Agriculture the sum of one hundred fifty-three thousand, one hundred and fifty dollars ($153,150) for the two years beginning July 1, 1915, and ending June 30, 1917, to be used as follows:"

The bill then specified forty-four separate purposes and opposite each a specific amount was set down. In most of them the amounts of the expenditures were set down in the first column, headed "Per annum," and the total in the final column, with footings of the first column as $88,400 and of the column of totals $153,150. Included in the several purposes were those mentioned below. The Governor returned the bill to the house of representatives, in which it originated, with his veto message, which, so far as material in this case, reads:

"In section 1, paragraph (*a*), I veto the item 'For coal, coke and wood, $155 per annum.' In section 1, paragraph (*a*), I veto the item 'For forage, $720 per annum.' In section 1, paragraph (*a*), I veto the item 'For cattle barns, $20,000.' In section 1, paragraph (*a*), I veto the item 'For construction of a sanitary kitchen and toilet for Boys' State Fair School, $5000.' In section 1, paragraph (*a*), I veto the item 'For construction of permanent and sanitary eating houses, $10,000.' In section 1, paragraph (*a*), I veto the item 'For reconstructing seating capacity of coliseum, $5000.' In section 1, paragraph (*a*), I veto the item 'For constructing free grand stand, $20,000.' "

On January 24, 1916, the State Board of Agriculture delivered to the Auditor of Public Accounts an order signed by the president and secretary of the board and approved by the Governor, as follows:

*"Honorable James J. Brady, Auditor of Public Accounts:*

"Pay sixty-two thousand three hundred and seventy-five dollars ($62,375) to the order of J. F. Prather, treasurer of the Illinois State Board of Agriculture, being the balance due of the appropriation made by the Forty-ninth General Assembly for the items named below, in accordance with an act entitled 'An act making an appropriation in aid of the State Board of Agriculture, the State Bee-Keepers' Association, the Illinois Dairymen's Association, the Illinois State Poultry Association, the Illinois Live Stock Breeders' Association, the Illinois State Academy of Science, and the Illinois State Horticultural Society,' approved June 29, 1915, in force July 1, 1915.

| | |
|---|---|
| For salary of secretary | $500.00 |
| For coal, coke and wood | 155.00 |
| For forage | 720.00 |
| For traveling expenses of members of board | 1,000.00 |
| For cattle barns | 20,000.00 |
| For construction of a sanitary kitchen and toilets for Boys' State Fair School | 5,000.00 |
| For construction of permanent and sanitary eating houses | 10,000.00 |
| For reconstructing seating capacity of coliseum | 5,000.00 |
| For construction of free grand stand | 20,000.00 |

$62,375.00"

The board demanded of the Auditor of Public Accounts that he issue his warrant to the State Treasurer for the said amount of $62,375, payable as directed by the order, and demanded of the State Treasurer that he pay over said sum to the board, but the Auditor refused to issue the warrant and the State Treasurer refused to pay the amount demanded. Afterward the Auditor issued his warrant for the salary of the secretary and the traveling expenses of the members of the board, amounting to $1500, and the warrant was paid, but the Auditor and Treasurer persisted in their refusal to issue a warrant or pay the amounts vetoed by the Governor, amounting to $60,875. The State Board of Agriculture filed its petition in the name of the people in the circuit court of Sangamon county, setting forth these facts and praying for a peremptory writ of *mandamus* directed to James J. Brady, Auditor of Public Accounts, commanding him to issue a warrant for the said sum of $60,875, payable to the treasurer of the board, and commanding Andrew Russel, Treasurer of the State of Illinois, to pay to the treasurer of the board said sum of money. The defendants demurred and the demurrer was sustained and the petition dismissed. This is an appeal from the judgment.

The people, by article 9 of the constitution, required the General Assembly to provide revenue for the purposes of

the State government and that all taxes for said purposes should be paid into the State treasury. They also made careful provision for the proper disbursement of moneys from the State treasury for the legitimate purposes of the government and gave to the Governor a supervisory power to veto any item which does not meet with his approval. By section 17 of article 4 it was provided: "No money shall be drawn from the treasury except in pursuance of an appropriation made by law, and on the presentation of a warrant issued by the Auditor thereon." The method of making appropriations and the power of the Governor to veto items was provided for by section 16 of article 5, as follows: "Bills making appropriations of money out of the treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections, and if the Governor shall not approve any one or more of the items or sections contained in any bill, but shall approve the residue thereof, it shall become a law as to the residue in like manner as if he had signed it."

The constitution created the office of the Auditor of Public Accounts, on whose warrant, alone, money was to be drawn from the treasury. He was made the official examiner of accounts and claims against the State, which must be verified by him. The duty to determine whether a particular claim constitutes an obligation against the State is implied by the title of his office, and it is only when he draws his warrant for what he finds to be a proper charge against the State that it can be paid by the Treasurer. It is not within the power of the General Assembly to deprive the Auditor of Public Accounts of the power conferred upon him by the constitution to audit claims and charges against the State created in pursuance of an appropriation made by law. If a sum of money, or so much thereof as may be necessary for a specific purpose, is appropriated by law and paid over to any officer, board or other authority

authorized to make the expenditures, then that board, officer or authority becomes the one to determine the proper obligations of the State instead of the Auditor of Public Accounts, while the constitution contemplates that, the expenditure having been made or the obligation incurred, an account shall be submitted to the Auditor for his examination and verification before any money is drawn from the State treasury. The appropriation now in question was a setting apart from the money in the treasury of certain sums of money assigned to particular uses, to be expended, or so much as might be necessary, for such purposes by the State Board of Agriculture, and the sums could only be lawfully paid from the State treasury upon warrants drawn by the Auditor of Public Accounts after having audited the account, claim or obligation.

The order presented to the Auditor required payment of the aggregate sum therein mentioned to the treasurer of the State Board of Agriculture in advance of any expenditures by the board for the purposes mentioned and without showing that the board had incurred any obligation for any of the purposes of the appropriation or the amount of such obligation, and the members of the State Board of Agriculture are not even officers of the State and have no powers or functions as officers. (*State Board of Agriculture* v. *Brady,* 266 Ill. 592.) That an appropriation can only be paid out of the treasury in payment of obligations incurred for the particular purposes specified in the appropriation was decided in *People* v. *Swigert,* 107 Ill. 494, where it was sought to compel the Auditor and Treasurer to pay over to the captain of a company, in a lump sum, the share of an appropriation allotted to that company, and there was no showing that any obligation of the State had been incurred and no bill of particulars or specification was presented. The law on that subject was repeated in *Fergus* v. *Russel,* 270 Ill. 304, where it was held that an appropriation for a particular purpose can only be paid on the presen-

277 − 9

tation of itemized vouchers showing that obligations have been incurred. Section 7 of the act revising the law in relation to the department of agriculture (Laws of 1883, p. 1,) provides as follows: "Whatever money shall be appropriated to the department of agriculture shall be paid to the State Board of Agriculture and may be expended by them as in the opinion of said board will best advance the interests of agriculture, horticulture, manufactures and domestic arts in this State." This provision, if it were valid, does not apply to this case because the appropriations were made for specific purposes, and not to be expended for such purposes as in the opinion of the board would best advance the interests of agriculture, horticulture, manufactures and domestic arts. If the act did apply it would be in violation of the constitution, which provides that bills making appropriations shall specify their objects and purposes and appropriate to them, respectively, the several sums in distinct items and sections. The General Assembly must determine to what objects and purposes money of the State shall be appropriated, and cannot bestow that power upon any person or board for the exercise of discretion of the donee as to the objects for which the money shall be expended. It is not to be understood that money may not be paid to the State Board of Agriculture, where reasonably necessary, in advance of its disbursement by the board where an obligation has been incurred, as in the case of premiums at the State fair, where the board can show to the Auditor that it has offered to the public, generally, premiums to the amount of the appropriation which it will be bound to pay. The Auditor was not required by law to issue his warrant in compliance with the order and the Treasurer was not required to pay over the sum of money demanded.

What has been said would dispose of this case and require an affirmance of the judgment, but to stop here would only postpone the decision of the case on the merits as to the power of the Governor to veto the particular items men-

tioned in his veto message. The argument of counsel for the relator against the power of the Governor to veto the items in question is on the ground that the only distinct item of the appropriation was the whole amount of $153,-150, and what followed was only an apportionment of that item or a direction how it should be used. The Supreme Court of Oklahoma expressed that view in the case of *Regents of the University* v. *Trapp,* 28 Okla. 83, where the legislature had passed a bill appropriating $285,810.23, or so much thereof as might be necessary, for the support and maintenance of the State University, and provided that the appropriation should be apportioned as thereinafter provided, in distinct amounts aggregating more than said sum, and the Governor approved of the amounts apportioned to the extent of said sum. If the bill in that case can be regarded as of the same character as the one under consideration we could not justify such a conclusion under our constitution, which provides that bills making appropriations shall appropriate to the specified objects and purposes, respectively, their several amounts in distinct items and sections. The general appropriation of the total sum specifies no purpose or object, but declares that the sums appropriated are to be used for the purposes thereinafter named. The general appropriation, without the following items, would not be in compliance with the constitution, and to hold that it was the only distinct item of the appropriation would be to nullify the power given by the constitution to the Governor to withhold his approval from distinct items. The word "item" is in common use and well understood as a separate entry in an account or a schedule, or a separate particular in an enumeration of a total which is separate and distinct from the other particulars or entries, and the items vetoed by the Governor come within that meaning. The court understood the word to have that meaning in *Lovell* v. *Sny Island Levee Drainage District,* 159 Ill. 188, where it was said that an item is a separate particular of

an account, and it was held that the amounts included in the warrants in that case were separate particulars of the expenditures and separate items. The Governor had power to veto the particular items in the bill in question in this case, and having done so, the items vetoed did not become any part of the law.

The court did not err in sustaining the demurrer and dismissing the petition.

The judgment is affirmed.    *Judgment affirmed.*