[Sac. No. 3538. In Bank.—October 24, 1923.]

WILL C. WOOD, State Superintendent of Public Instruc-
tion, etc., Petitioner, v. RAY L. RILEY, Controller, etc.,
Respondent.

[1] CONSTITUTIONAL LAW—BUDGET BILL—CONSTRUCTION OF PROVISO
CLAUSE—ITEM OF APPROPRIATION — ELIMINATION BY GOVERNOR.—
The "proviso" inserted by the legislature in section 4 of the
General Appropriations Act or "budget bill" of 1923, "that the
state controller shall at the request of the state director of educa-
tion set over and transfer from the appropriations for salaries and
support for the several teachers colleges and special schools an
amount not exceeding one per cent of such appropriations and
the amount so transferred shall be designated as the administra-
tive allotment of the state department of education and shall be
available for use by the director of education for the payment
of the salaries and support of the general administrative office of
the division of normal and special schools during the seventy-fifth
and seventy-sixth fiscal years," amounted to and was an item of
appropriation, within the meaning of article IV, section 34, of the
constitution, and as such was subject to elimination by the
Governor.

PROCEEDING in Mandamus to compel the State Con-
troller to set aside certain moneys for use by the state di-
rector of education. Writ denied.

The facts are stated in the opinion of the court.

Devlin & Devlin for Petitioner.

Dion R. Holm, J. L. Atteridge and H. C. Lucas for Re-
spondent.

Garret W. McEnerney and Andrew F. Burke for State
Board of Control.

WASTE, J.—This is an application, on an order to show
cause, for a writ of mandate involving the question whether
or not certain language inserted by the legislature in the
General Appropriations Act or "budget bill" of 1923 (Stats.
1923, p. 242), and vetoed by the Governor, is, nevertheless,
effective upon the theory that the veto was nugatory. The

petitioner is the state superintendent of public instruction
and, as such, *ex-officio* director of education of the state.
The respondent is the controller of the state, who has re-
fused the demand of petitioner that he set over and transfer
from the appropriations for salaries and support of the
several teachers' colleges and special schools in the state an
amount not exceeding one per cent of such appropriations,
as an allotment for the payment of salaries and support of
the general administrative office of the division of normal
and special schools. The case was argued and has been
briefed in connection with the so-called "budget cases"
already decided, but the questions presented for considera-
tion do not depend upon, and are not germane to, the dis-
cussion or the principles involved in the other decisions.

There are in this state a number of teachers' colleges and
special schools, the administration of which, prior to 1921,
was committed to a board of trustees for each institution.
There was created in that year a department of the state
government known as the department of education (Stats.
1921, p. 1033; Pol. Code, secs. 362–362e), which succeeded
to, and was vested with, the duties, powers, purposes, re-
sponsibilities, and jurisdiction of the state board of educa-
tion and of these various boards of trustees of the several
normal schools or teachers' colleges and special schools.
These last-named boards, together with positions of all dep-
uties, officers, and employees thereunder, were abolished, and
the management of the various institutions was placed under
the control of an executive officer to be known as the di-
rector of education, but who is, in fact and *ex officio*, the
state superintendent of public instruction. The work of
the department was divided into two divisions. The "divi-
sion of text-books, certification and trust funds" was placed
in charge of the state board of education, which was ex-
pressly continued in force with all previous powers and
functions conferred on it by law, and with certain powers
and functions in respect to the conduct of normal schools
or teachers' colleges and special schools. The "division of
normal and special schools," created to perform the func-
tions theretofore conferred by law on the boards of trustees,
was put "in charge of the director of education for the pur-
pose of administration." The act further authorized (sec.
362e) the department of education to expend the moneys

in any appropriation or in any special fund in the state treasury at the time remaining or made available by law for the administration of the provisions of any of the statutes enumerated, or for the use, support, or maintenance of any board, commission, office, or officer that was abolished, and whose duties, powers, and functions were transferred to and conferred upon the department of education. It was also provided that the funds of the state board of education in respect to functions retained by it, including such funds as had been or might thereafter be entrusted to said board for administration, and the funds of the superintendent of public instruction, should be administered as theretofore. No distinct or separate appropriations for the support of the office of director of education were made by the legislature in 1921, the administrative expenses of the department apparently being provided for in the general appropriations for the support, salaries, and expenses of the state board of education and superintendent of public instruction. (Stats. 1921, p. 1711.)

At the general election, held on November 7, 1922, section 34 of article IV of the state constitution was amended to provide for the establishment of an executive budget system in the handling of the state finances. The amendment fixes definitely upon the Governor the responsibility for preparing a budget showing in detail the items of expenditure recommended by him, and the anticipated revenues of the state. In conformity with the new procedure, the Governor submitted to the legislature, within the first thirty days of its last regular session, and prior to its recess, with an explanatory message, a budget of all proposed expenditures of the state and its institutions, boards, officers, and agencies, provided by existing law, or recommended by him, and of all estimated revenues for each of the fiscal years of the present biennial period. The budget was accompanied by an appropriation bill covering the proposed expenditures, which was known as the "budget bill." As submitted by the Governor and passed by the legislature, the bill contained, under the general heading "Educational," various separate items of appropriation for the state board of education under appropriate designations of "salaries," "support," "new equipment," and "free text-books." It also carried separate items in different amounts for "salaries, superintendent of

public instruction, deputies and employees''; ''support, superintendent of public instruction''; and for ''new equipment, superintendent of public instruction.'' There were no appropriations in the budget bill for the department of education, as such, or for the director of education by that designation. There were distinct and separate items of appropriation ''for salaries of officers and employees'' and ''for support'' of each of the state teachers' colleges and special schools, identical in form and substance, the only difference being in the name of the school and the amount appropriated. For instance, the first one read as follows: ''For salaries of officers and employees, Chico State Teachers College, one hundred eighty-nine thousand eight hundred eighty dollars. For support, Chico State Teachers College, forty-two thousand six hundred dollars.''

[1] Section 4 of the bill, as originally presented by the Governor, contained a provision that not more than one twenty-fourth of the amount appropriated under the act for each department or institution, for support and salaries for the biennial period, shall be expended during any one month without the consent of the state board of control, and not more than one-half of such appropriation shall be expended in one year, unless expressly authorized by the act itself. The legislature added a ''proviso'' to this section reading as follows: ''Provided, that the state controller shall at the request of the state director of education set over and transfer from the appropriations for salaries and support for the several teachers colleges and special schools an amount not exceeding one per cent of such appropriations and the amount so transferred shall be designated as the administrative allotment of the state department of education and shall be available for use by the director of education for the payment of the salaries and support of the general administrative office of the division of normal and special schools during the seventy-fifth and seventy-sixth fiscal years.'' This ''proviso'' forms the basis for the question here under consideration.

The Governor reduced, or entirely eliminated, many items of appropriation, while approving other portions of the measure. He refused to approve the proviso inserted by the legislature in section 4 upon the ground that ''such appropriation was unnecessary,'' giving as his reason that ''the

director of education has an ample allowance for running his department.'' The legislature attempted to override the Governor's various vetoes, but failed (Assembly Journal, May 8, 1923, pp. 30, 31), and the measure became a law. (Stats. 1923, p. 242, c. 121.) The aggregate of appropriations for the salaries of officers and employees of the various teachers' colleges and special schools carried in the budget bill approved by the Governor amounted to $2,187,754. Claiming that the action of the Governor in not approving the proviso in the bill was nugatory, the director of education demanded of the state controller that he transfer and set over from such appropriations for the teachers' colleges and special schoools one per cent of the amount of each item, aggregating in all the sum of $21,877.54, and designate the fund so transferred as ''the administrative allotment of the state department of education for the seventy-fifth and seventy-sixth fiscal years.'' The controller refused to do so, and the director of education brought this proceeding in *mandamus* to enforce his demand. It is his contention that the language of the proviso above quoted remains an integral part of the budget bill, notwithstanding the Governor's disapproval and the failure of the legislature to override the veto, and should be followed by the state controller on his demand. This claim is based upon the theory that the executive action was nugatory for the reason that it was in effect but an attempted veto of a part of a sentence in the appropriation bill that does not appropriate money, but simply provides for a transfer, as a matter of bookkeeping, of a percentage of funds already appropriated. The respondent takes the counter-position that the proviso amounted to and was an ''item of appropriation'' within the meaning of the constitution, and, as such, was subject to elimination by the Governor. The petitioner concedes that if it be held that it did amount to an appropriation his application for a writ of mandate must fail.

The petitioner has cited a number of authorities to the effect that, except in the case of a bill containing several items of appropriation of money, the Governor is not empowered to modify or change the effect of a proposed law after its passage by the legislature, or to do anything concerning it except to approve it as a whole, and that he may not partially approve and partially disapprove an item of

appropriation carried in a general appropriation bill. He cites these cases and others in support of his contention that, as no appropriation resulted from the insertion of the proviso, the Governor's attempted veto was nugatory, and amounted only to a futile attempt to interfere with a legislative direction concerning part of an appropriation. Much reliance is placed by petitioner upon *State* v. *Holder*, 76 Miss. 158 [23 South. 643]. The constitution of Mississippi (section 73) provides that the Governor may veto any item of appropriation in an appropriation bill and approve other parts of the same, and the part approved shall become a law. A bill appropriated money to a college provided that the trustees thereof should give the president of the college certain powers. The Governor vetoed this part of the proviso and approved the balance of the bill. It was held that the bill failed in whole and in part to become a law; that the Governor had only a qualified and destructive legislative function and never any creative legislative power, and that the attempt to exercise such power destroyed the attempted approval of the balance of the bill. But in this case it is apparent that the Governor, by his veto of the proviso, sought to make an absolute appropriation out of that which the legislature intended as only a conditional one. The court held, in effect, that the Governor's veto was a nullity, for the reason that the condition was an essential element of the appropriation and could only be eliminated by vetoing the entire appropriation. He could not, it held, "transform a conditional or a contingent appropriation into an absolute one in disregard and defiance of the legislative will," for to do so "would be the enactment of law by executive authority without the concurrence of the legislative will and in the face of it." Other cases relied on by petitioner may as readily be distinguished.

By reason of the power of veto lodged in the Governor, the chief executive has always had a most important relation to the legislative department, and, in so far as his control over the expenditures of the state is concerned, the recent amendment to the constitution providing for an "executive budget" (art. IV, sec. 34) has tremendously increased and widened his powers, which was undoubtedly the primal object of the people in voting for its adoption. That fact must not be lost sight of in the present proceeding. Under the

old system, the Governor might eliminate, but might not reduce, an appropriation. He could only "object to one or more items" (Const., art. IV, sec. 16). He may now reduce or eliminate any one or more items of appropriation of money, while approving other portions of the bill. (Const., art. IV, sec. 34, as amended Nov. 7, 1922.) Under the new plan he is not forced to choose between vetoing an item of appropriation for a meritorious purpose, or approving it for an excessive amount. Without entirely rejecting it, he may reduce the amount provided for to a sum in accord with his own view as to the need for the expenditure. In view of the purpose and effect of the amended section of the constitution much of the argument advanced and many of the authorities cited by the petitioner lose persuasive force. *Lukens* v. *Nye,* 156 Cal. 498 [20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244, 105 Pac. 593], was decided long before the "budget amendment" was adopted. It dealt with the effort of the Governor to reduce the amount of a special appropriation by securing an agreement from the parties interested that they would accept less than the amount appropriated in full settlement and satisfaction of the claim against the state. They so agreed and the Governor unqualifiedly approved the bill for the whole amount. The decision is not an authority in the present case, for it dealt with the effect of the agreement by which the Governor was induced to sign the bill, and which was interposed as a defense when suit was instituted to collect the whole amount of the appropriation from the state. *Fergus* v. *Russel,* 270 Ill. 304 [Ann. Cas. 1916B, 1120, 110 N. E. 130], and *People* v. *Brady,* 277 Ill. 124 [115 N. E. 204], are not authority in this matter. The Governor of that state attempted to veto certain items of appropriations. The constitution of Illinois provides, as did the constitution of this state *before the present amendment,* that if the Governor should not approve any one or more of the items or sections contained in any appropriation bill, but should approve the residue, the bill should become a law as to such residue. *Fulmore* v. *Lane,* 104 Tex. 499 [140 S. W. 405], was decided under a like provision of the constitution of Texas, the court holding that nowhere in the constitution of that state was authority given the Governor to reduce or veto in part any distinct item. These cases, and others cited, are only in point, there-

fore, if no appropriation was in fact made by the proviso inserted in section 4.

Petitioner cites other cases in support of his contention that the Governor has no power to veto portions of appropriation bills that merely prescribe the conditions on which the money appropriated may be drawn. He contends that when an appropriation of money is made, directions given as to how it shall be spent, and other matters contained in the bill incidental to the appropriation, are inseparable from the appropriation itself, and one cannot be disapproved without the other being vetoed. (*State* v. *Holder, supra; Miller* v. *Walley*, 122 Miss. 521 [84 South. 466].) If a veto be attempted in such cases, he contends, it is unavailing and of no effect, as both the appropriation and the provisions must stand or fall together. (*Callaghan* .v. *Boyce*, 17 Ariz. 433 [153 Pac. 773]; *Regents* v. *Trapp*, 28 Okl. 83 [113 Pac. 910].) These decisions, however, like those heretofore noted, were decided under constitutional provisions similar to those existing in the constitution of California prior to its amendment. Respondent finds in some of them expressions which seem to strengthen his position. For instance, in the Callaghan case, *supra,* the court said (17 Ariz. 458 [153 Pac. 782]), referring to an item of appropriation: " 'Item,' therefore, is used synonymously with 'subject,' 'distinct or separate parts,' and an objection and disapproval by the Governor of an item or several items of appropriations of money has reference to the distinct subject or part for which the appropriation is made and all its incidents. In *Commonwealth* v. *Barnett*, 199 Pa. 161 [55 L. R. A. 882, 48 Atl. 976], the term 'item,' as used in article IV, section 16, Constitution of Pennsylvania, a similar provision, was held to mean 'the particulars, the details, the distinct and severable parts of the appropriation,' and is 'used interchangeably in the same sense' with the word 'part.' See 4 Words and Phrases, 3797."

In the case of *People* v. *Brady, supra,* also relied upon by petitioner, it was held that, under a constitutional provision similar to the one formerly in force in this state, the Governor had the power to veto any portion of an appropriation bill which was in effect an allocation or setting apart of a sum of money for a given purpose, even if such allocation or setting apart follows an appropriation of a

gross sum of which the amount allocated is only a part. The appropriation bill under review in the Brady case provided that certain sums, or so much thereof as might be necessary for the respective purposes thereafter named, should be appropriated to certain boards, societies, and associations enumerated. Following this provision was an appropriation of the sum of $153,150 to the state board of agriculture for the biennial period. Then followed a specification of forty-four separate purposes for which this gross amount was to be used, for each of which a definite amount was set down. The Governor vetoed a number of these forty-four separate amounts. It was argued that the Governor had no power to veto the items in question because the only distinct "item" of appropriation was the whole amount of $153,150, and that the enumeration which followed was only an apportionment of that item, or a direction as to how it should be used. Reliance was placed upon the case of *Regents* v. *Trapp, supra.* In disposing of the argument the supreme court of Illinois said: "If the bill in that case [the Trapp case] can be regarded as of the same character as the one under consideration we could not justify such a conclusion under our Constitution, which provides that bills making appropriations shall appropriate to the specified objects and purposes, respectively, their several amounts in distinct items and sections. . . . The word 'item' is in common use and well understood as a separate entry in an account or a schedule, or a separate particular in an enumeration of a total which is separate and distinct from the other particulars or entries, and the items vetoed by the Governor come within that meaning." It was held that the Governor had power to veto the particular items in the bill in question, and, he having done so, the items vetoed did not become any part of the law.

In a recent decision cited by and relied on by both petitioner and respondent, *Fairfield* v. *Foster* (Ariz.), 214 Pac. 319, the supreme court of Arizona sets forth the divergent views which have resulted from cases involving the veto power of the Governor in situations like that we are considering here. The issue in the case was whether the Governor legally vetoed a part of a subdivision of a section of an appropriation bill passed by the legislature. It appears from the decision itself and from the briefs of the parties

in this action, that the bill appropriated certain sums for the several purposes and objects specified, and the state auditor was authorized and directed to draw warrants upon the state treasurer to and not to exceed the amounts set forth in the bill, a list of which was made in detail. In subdivision 5 there was appropriated "For the Corporation Commission: For Salaries and Wages......$53,880. For the following positions not to exceed the annual rates herein specified [24 in all, including the following]:

1 Rate Clerk .................$2100.00 per annum
1 Stenographer ............... 1560.00 per annum
1 Investment stenographer ..... 1680.00 per annum
1 Mailing and Reception Clerk.. 1560.00 per annum
For Contingencies ............ 2500.00"

(Session Laws of Arizona, 1922, Special Session, page 273.)

The Governor sent a message to the Secretary of State, transmitting, with his signature of approval, the general appropriation bill, with the exception of certain items, among others those just noted in subdivision 5. In a proceeding in *mandamus* to compel the state auditor to draw a warrant on the state treasurer in payment of the salary provided in one of the vetoed items, the court examined and cited a number of the decisions relied on by the petitioner here, and discussed the divergent views taken by the particular courts as to the general nature of the veto power and the purpose to be accomplished by the special constitutional provisions considered in the decisions. The constitution of Arizona authorizes the Governor to "object to one or more of the items" in an appropriation bill, "while approving other portions of the bill." The court said: "But certainly, whenever the Legislature goes to the extent of saying in any bill appropriating money that a specified sum of money raised by taxation shall be spent for a specified purpose, and that alone, while other sums mentioned in the bill are to be used otherwise, no matter what language it may be disguised under, it is, nevertheless, within both the spirit and letter of the Constitution, an 'item' within the bill, and may be disapproved by the Governor without affecting any other items of appropriation contained therein."

In *Commonwealth* v. *Barnett*, 199 Pa. 161 [55 L. R. A. 882, 48 Atl. 976], it was held that, under the constitutional power to disapprove of any item or items of an appropria-

tion bill, the Governor might disapprove one or more of the subdivisions of a clause making appropriations for schools by which the amount was distributed among separate, designated schools or educational interests, either as to the beneficiary or as to the amount, and approve the residue.

In further support of his contention that the proviso inserted in the bill did not amount to an appropriation, petitioner argues that it took no money from the state treasury. On the surface, the argument seems plausible, but, correctly viewed, such allotment or direction was a specific setting aside of an amount, not exceeding a definite fixed sum, for the payment of certain particular claims or demands, to wit, those that might be occasioned by the "payment of the salaries and support of the general administrative office of the division of normal and special schools during the seventy-fifth and seventy-sixth fiscal years"—purposes not otherwise expressly provided for in the appropriation bill. It appears in no other light than as amounting to an item of appropriation in that it adds an additional amount to the funds already provided for the administration of the office of the director of education through the sums appropriated for the use of the state board of education and the superintendent of public instruction.   This court has held that "by a specific appropriation" was understood "an Act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand . . . The Fund upon which a warrant must be drawn must be one the amount of which is designated by law, and therefore capable of definitive exhaustion—a Fund in which an ascertained sum of money was originally placed, and a portion of that sum being drawn an unexhausted balance remains, which balance cannot be thereafter increased except by further legislative appropriation." (*Stratton* v. *Green,* 45 Cal. 149, 151.  See, also, *State* v. *Steele,* 37 La. Ann. 353; *State* v. *La Grave,* 23 Nev. 25 [62 Am. St. Rep. 764, 41 Pac. 1075]; *State* v. *Lindsley,* 3 Wash. 125 [27 Pac. 1019]; also, *State* v. *Moore,* 50 Neb. 88 [61 Am. St. Rep. 538, 69 N. W. 373].)   Where the exact amount of a disbursement required to be provided for cannot be ascertained in advance, the legislative act must itself fix the maximum authorized to be expended for a specific purpose. (*Blaine Co. Inv. Co.* v. *Gallet,* 35 Idaho, 102 [204 Pac. 1066]; *State* v. *Eggers,* 29

Nev. 469 [16 L. R. A. (N. S.) 630, 91 Pac. 819]; *People*
v. *Brady, supra.*) In this instance the legislature appro-
priated a definite maximum amount or "named sum," which
it in effect directed should be set apart in the treasury and
devoted to the payment of particular claims and demands
arising by reason of the "payment of the salaries and sup-
port of the general administrative office of the division of
normal and special schools during the seventy-fifth and
seventy-sixth fiscal years." The proviso, therefore, appears
to fill all the requirements of a distinct item of appropria-
tion of so much of a definite sum of money as may be re-
quired for a designated purpose connected with the state
government. It was said in *Fairfield* v. *Foster, supra,* quot-
ing from *Commonwealth* v. *Barnett, supra:* " 'In ordinary
bills the single subject is a unit which admits of approval
or disapproval as a whole, without serious inconvenience,
even though some of the details may not be acceptable. But
every appropriation, though it be for a single purpose,
necessarily presents two considerations almost equally mate-
rial, namely, the subject and the amount. The subject may
be approved on its merits, and yet the amount disap-
proved. . . . If the Legislature, by putting purpose, sub-
ject, and amount inseparably together, and calling them
an "item," can coerce the Governor to approve the whole
or none, then the old evil is revived, which this section was
intended to destroy.'

"It cannot be questioned that the preceding quotations
state the evil which our Constitution makers wished to pre-
vent. In plain English, they wished the Governor to have
the right to object to the expenditure of money for a speci-
fied purpose and amount, without being under the necessity
of at the same time refusing to agree to another expenditure
which met his entire approval."

We may judge, from the language of the Governor's veto
message, that had an express appropriation been made for
the payment of these salaries and support of the general
administrative office of the division of normal and special
schools during the seventy-fifth and seventy-sixth fiscal
years, it would have met with executive disfavor. It is very
clear that the situation presented is that no appropriation
having been recommended by the Governor, or included in

the proposed budget bill, for the payment of the "salaries and support of the general administrative office of the division of normal and special schools," other than the general provisions for the support of the state board of education and the state superintendent of schools, the legislature attempted, by the inclusion of the proviso in the bill, to make such additional appropriation for such purpose under the guise of an administrative allotment. Therefore, looked at in the light of what it was intended to accomplish, and what it would have accomplished if allowed to stand, one cannot escape the conviction that it worked an appropriation. It added a specific amount to the allowance already made for the use of the state board of education and the state superintendent of schools.

To sustain the contention of the petitioner that the proviso in question did not amount to an item of appropriation and was therefore removed from the effect of the executive veto would be to hold that the legislature might, by indirection, defeat the purpose of the constitutional amendment giving the Governor power to control the expenditures of the state, when it could not accomplish that purpose directly or by an express provision in appropriation bills. The present case may be used by way of illustrating this point, and we use it for that purpose only, and not to challenge or impugn the good faith of the legislature or petitioner. If, after providing for the salaries and support of the various teachers' colleges and special schools of the state, a distinct and definite purpose, and then providing that one per cent of this amount shall be set aside on demand as an administrative allotment for payment of the salaries and support of the general administrative office of the director of education, another and separable purpose, the legislature may appropriate one per cent of a definite and fixed amount for such purpose, and such appropriation cannot be controlled by the Governor, the legislature need not stop at one per cent, but may carry the so-called "administrative allotment" to any extent.

It is contended by the petitioner that the office of the director of education, created by the legislature, is a separate and distinct office from that of superintendent of public instruction, provided for by the constitution. It follows,

192 Cal.—20

says the petitioner, that the appropriation for the support of the office of the superintendent of public instruction cannot be used for the support of the office of the director of education, although the same person may occupy both offices. He asserts that section 362e of the Political Code expressly prohibits the funds of the superintendent of public instruction from being used for the administrative expenses of the director of education, for the reason that it provides that "the office of the superintendent of public instruction shall be administered as heretofore." We do not need to pass upon this contention, for if it be assumed that petitioner's theory is correct, it at once becomes more than ever apparent that the legislative proviso inserted in the appropriation bill amounts to an express item of appropriation for the support of the office of the director of education.

Petitioner contends at some length in a supplemental memorandum, discussing *Fairfield* v. *Foster, supra,* that if the Governor vetoed the item in subdivision 4 on the theory that it was in fact an appropriation of one per cent of the total amount provided for the state schools and special colleges, it would follow that such appropriation for the state schools would be decreased to ninety-nine per cent of the aggregate amount provided by the legislature. It would require distinct action on the part of the Governor, he argues, to decrease the appropriation for the normal and special schools to ninety-nine per cent of the amount voted by the legislature. What may or may not have been the effect of the Governor's veto of the appropriation made by the proviso on other portions of the act does not concern the court at this time. The point of this decision is that the legislature attempted to make an appropriation for the payment of the salaries and support of the general administrative office of the division of normal and special schools, in addition to the appropriation made for support, including salaries, of the state board of education and of the office of the state superintendent of schools, in such way as to circumvent the veto power of the Governor. Under the constitution of the state as now existing he had the power to eliminate the item, and has stricken it from the general appropriation bill.

The order to show cause is discharged and the petition for a writ of mandate is denied.

Kerrigan, J., Lennon, J., Lawlor, J., Seawell, J., Myers, J., and Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred.