REQUESTED BY: Joanne Pepperl Revisor of Statutes
LB 543 from the 2001 legislative session is a general appropriations bill which makes appropriations for the expenses of Nebraska government for the biennium ending June 30, 2003. That bill was passed by the Legislature and submitted to Governor Johanns for his approval on May 9, 2001. Subsequently, the Governor made a number of line-item vetoes in various portions of the bill. The focus of your opinion request is line-item vetoes made in Section 44 of LB 543, dealing with the State Department of Education.
As is the current practice with large appropriation bills, Section 44 of LB 543 starts with the following general appropriation language:
 Sec. 44 AGENCY No. 13 — STATE DEPARTMENT OF EDUCATION Program No. 25 — Education, Administration, and Support
FY2001-02 FY2002-03
GENERAL FUND 811,437,932 840,150,645
CASH FUND 8,078,968 8,088,244
FEDERAL FUND est. 169,725,203 171,488,298
REVOLVING FUND 515,805 531,508
PROGRAM TOTAL 989,757,908 1,020,258,695
SALARY LIMIT 8,825,407 9,257,690
After the general appropriation language, Section 44 contains a number of individual "earmarking" provisions which designate specified sums of money for particular purposes. Some of those earmarking provisions provide that the funds included therein shall only be used for certain purposes; some do not. Some of the earmarking provisions also appropriate monies to specific named Funds and Programs. Examples of the earmarking provisions at issue in your opinion request include the following language:
 There is included in the amount shown for this program $3,397,721 General Funds provided as state aid for FY2001-02 and $3,482,664 General Funds provided as state aid for FY 2002-03 for programs for learners with high ability.
and
 There is included in the amount shown for this program $55,000 General Funds provided as state aid for FY2001-02 and $55,000 General Funds provided as state aid for FY2002-03 for economic education programs.
Pursuant to art. IV, § 15 of the Nebraska Constitution,[1] the Governor used his line-item veto to reduce and veto a number of the provisions in Section 44 of LB 543. With respect to the general appropriation language at the beginning of the section, he crossed out the total sums under the GENERAL FUND and PROGRAM TOTAL entries, and inserted the following reduced amounts:
FY2001-02 FY2002-03
GENERAL FUND 811,218,432 839,912,645
PROGRAM TOTAL 989,538,408 1,020,020,695
With respect to the "earmarking" sections, he simply crossed out and initialed a number of the earmarking amounts without inserting either reduced figures or a zero. However, the total of the "earmarked" sums which were vetoed exceeded the amount of the reductions which the Governor made in the GENERAL FUND and PROGRAM TOTAL entries. When the Governor returned the bill to the Legislature with his objections, he made the following comments with respect to Section 44:
 The General Fund appropriation to the Department of Education's Administrative and Support Program had been increased to provide funding for a variety of educational leadership, policy setting, technical assistance, and administrative activities. I am reducing the amount for several items added above my recommendations by one-half and encourage the Commissioner of Education and the State Board of Education to direct the remaining amounts in a manner that satisfies the needs or enhances the performance of our current education programs. I have vetoed specific earmarking amounts related to these items to allow this discretion for the Commissioner of Education. I have not reduced the additional appropriations of 2.7 million dollars for each year of the biennium that we have included for the Attracting Excellence to Teaching program.
Legislative Journal, 97th Neb. Leg., 1st Sess. 2008 (May 14, 2001) (Message from the Governor regarding the return of LB 543). The Governor's veto message to the Legislature regarding LB 543 also included a chart which indicated that the vetoed amount for Section 44 was the amount of the reduction in the general appropriation language at the beginning of the section. Id. at 2012. We understand that the Governor's changes to LB 543 were not overridden by the Legislature.
As Revisor of Statutes, you are responsible for preparing the slip laws of legislative bills which show the version of those bills passed by the Nebraska Legislature. The slip laws are also included in the bound session laws for each legislative session. In your opinion request letter, you state that it has been your prior practice, with respect to line-item vetoes by the Governor, to print the figures in an appropriations bill as changed by the Governor unless the line-item vetoes were overridden by the Legislature. If the vetoes were overridden, you print the original figure, the subject of the successful override, in the corresponding slip law. However, you also state that you are unsure as to how to reflect the changes made by the Governor in LB 543 in the slip law for that bill because:
 It is unclear whether the removal of the earmarked amounts is within the Governor's authority to veto an item of appropriation. If the earmarked amount is removed from the slip law, the language could be read as allowing a higher dollar amount for the particular item contrary to legislative intent.
As a result, you requested our opinion "as to how these changes made by the Governor [in LB 543] should be shown in the slip law."
 ANALYSIS
Our research has disclosed no Nebraska cases which take up the precise issues raised in your opinion request, and indeed, there is very little Nebraska case law which deals in any way with the Governor's veto authority. Nor are there any previous opinions from this office which directly consider the matters you have raised. As a result, we have reviewed a number of case authorities from other jurisdictions pertaining to the veto authority held by a governor, although the applicability of those cases is often limited, given the peculiarities of each state's constitutional provisions in that area and the different factual circumstances before each court. Those case authorities offer some guidance in the present instance.
We will first set out several general rules or conclusions which may be drawn from various cases dealing with the gubernatorial veto or line-item veto authority.
 1. Several underlying purposes have been offered for a governor's line-item veto authority. Those include: a. the prevention of "log rolling" [2]
and omnibus appropriation bills, b. the prevention of corruption and the passage of hasty and ill-conceived legislation, and c. the achievement of fiscal constraint and the advancement of statewide rather than parochial fiscal interests, i.e., the governor can excise unneeded programs or expenditures from an appropriations bill to restrain public expenditures. Washington State Legislature v. Lowry, 131 Wn.2d 309, 931 P.2d 885 (1997); State ex rel. Coll v. Carruthers, 107 N.M. 439, 759 P.2d 1380 (1988); Colorado General Assembly v. Lamm, 704 P.2d 1371 (Colo. 1985); Cennarrusa v. Andrus, 99 Idaho 404, 582 P.2d 1082 (1978).
 2. A governor's veto power is a negative power and not a positive power. That is, with respect to line-item vetoes, it is a power to delete or destroy a particular item and not a power to alter, enlarge or increase the effect of remaining items. The line-item veto power is not the power to enact or create new legislation by selective deletions, and a governor does not have the power to enlarge an appropriation by removing restrictions imposed by the legislature. Opinion of the Justices to the Senate, 419 Mass. 1201, 643 N.E.2d 1036 (1994); Harbor v. Deukmejian, 240 Cal.Rptr. 569, 742 P.2d 1290 (1987);Colorado General Assembly v. Lamm, 704 P.2d 1371 (Colo. 1985); State ex rel. Link v. Olson, 286 N.W.2d 262 (N.D. 1979); State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, 524 P.2d 975 (1974).
 3. A governor cannot line-item veto qualifications, conditions, limitations or restrictions on the expenditure of public funds without vetoing the item of expenditure which they modify. Stated another way, if a provision in an appropriation is a condition or restriction imposed by the Legislature, the governor cannot disapprove the restriction alone, he or she must approve the entire appropriation item with the restriction, or disapprove or reduce the entire item with the restriction. Attorney General v. Administrative Justice of the Boston Municipal Court, 384 Mass. 511, 427 N.E.2d 735 (1981); State ex rel. Link v. Olson, 286 N.W.2d 262 (N.D. 1979);Opinion of the Justices to the Governor, 373 Mass. 911, 370 N.E.2d 1350 (1977); Henry V. Edwards, 346 So.2d 153 (La. 1977); Brault v. Holleman, 217 Va. 441, 230 S.E.2d 238 (1976); State ex rel. Sego v. Kirkpatrick, 86 N.M. 359, 524 P.2d 975 (1974); State ex rel. Cason v. Bond, 495 S.W.2d 385 (Mo. 1973).
 4. The legislature cannot intrude upon the governor's constitutional right to veto substantive matters by inserting inappropriate substantive provisions in an appropriations bill. If that occurs, such substantive provisions will be treated as "items" which are subject to the governor's line-item veto authority. Colton v. Brandstad, 372 N.W.2d 184
(Ia. 1985); Henry V. Edwards, 346 So.2d 153
(La. 1977).
Application of the rules and conclusions set out above to the present circumstances, particularly those rules dealing with the nature of the line-item veto power and its effect on restrictions or conditions created by a legislature, might seem to suggest that the Governor's vetoes of the "earmarking" provisions at issue in Section 44 of LB 543 are improper as an attempt to create new or altered legislation by selective deletions of restrictions created by the Legislature. However, there is a another group of cases which is relevant to this issue.
In Welden v. Ray, 229 N.W.2d 706 (Ia. 1975), the Iowa Supreme Court held that lawful qualifications imposed by the Iowa Legislature upon various appropriations were not separate, severable provisions which could be vetoed by the governor under his line-item veto power. However, in the course of that opinion, the court stated:
 We would also have a different case had the legislature attempted to evade the item-veto amendment by the device of a lump-sum appropriation followed by subdivisions calling for the expenditure of the lump sum in specified amounts for named purposes. See People ex rel. State Board of Agriculture v. Brady, 277 Ill. 124, 115 N.E. 204
[1917]. The legislature contended in Brady that the governor could not item-veto one of the subdivisions without vetoing the lump sum, as the subdivision constituted qualifications upon the appropriation of the lump sum. The Illinois Supreme Court held otherwise, however, saying to hold that the whole bill was one item would constitute a legislative evasion of the governor's authority to veto distinct items. . . .
 The legislative device of a lump-sum appropriation with subdivisions unconstitutionally invades the item-veto authority of a governor, just as the gubernatorial device of the veto of a qualification on an appropriation unconstitutionally invades the lawmaking authority of a legislature.
Id. at 714 (emphasis in the original). Other cases which have followed the Brady "lump sum" rule, at least in some measure, include Karcher v.Kean, 97 N.J. 483, 479 A.2d 403 (1984), Green v. Rawls, 122 So.2d 10
(Fla. 1960) and Reardon v. Riley, 10 Cal.2d 531, 76 P.2d 101 (1938). In the Karcher case, the Supreme Court of New Jersey stated:
 Courts in other jurisdictions that have specifically considered this issue in the context of similar constitutional provisions for a gubernatorial line-item veto power have upheld the executive's right to reduce or eliminate specific appropriations without reducing by a like amount the total appropriation in which the specific item is included. In Reardon v. Riley, the court expressly ruled that the governor's refusal to make a corresponding reduction in a total appropriation equal to the reduction of a lesser-included appropriation does not constitute an unlawful "affirmative" use of the constitutional veto power. By upholding this exercise of the line-item veto power, the court reasoned that it not only gave full effect to the intent of the legislature, but also preserved the governor's power to reduce or eliminate items of an appropriation, as well as to approve them. Thus, although the legislature intended to authorize the total appropriation "regardless of the subsequent fate of the specific and included items of further appropriation," the governor could properly reduce that total by an amount less that the sum of the vetoed included items. Such action on the part of the governor, in the court's opinion, did not
 improperly increase an appropriation without legislative action, nor did it constitute an unauthorized veto of conditional or provisional language used in connection with the specific and included items of appropriation. It was an "elimination" of the specific and included items and a reduction of the general and inclusive item of appropriation. Such a conclusion appears to effectuate the intent of the Legislature without depriving the Governor of the full effect of the veto power granted him.
* * *
 The result espoused by the Appellate Division in the instant case — disallowing the deletion of an included appropriation without a corresponding reduction of the total appropriation — would too easily permit the Legislature to circumvent the Governor's line-item veto power and upset the system of checks and balances that must operate in the budget-making arena.
Karcher v. Kean, 97 N.J. 483, 499, 500, 479 A.2d 403, 412 (1984) (citations omitted).
It appears to us that the Brady "lump sum" rule has application to the present situation. For one thing, the factual circumstances in the various "lump sum" cases which follow the Brady rule closely resemble the facts at issue here, i.e., in those cases the legislature appropriated one general sum with other specific appropriation amounts included within that sum, and the governor line-item vetoed the specific appropriations which were part of the total without reducing the general sum to the same extent.[3] In contrast, the factual situations in the first group of cases cited above often involved gubernatorial vetoes of directive language or conditions in appropriations bills without a corresponding reduction in the actual appropriation at issue.
In addition, a number of courts have defined an "item" in an appropriations bill as an "indivisible sum of money dedicated to a stated purpose." Green v. Rawls, 122 So.2d 10, 15 (Fla. 1960). Accord ColoradoGeneral Assembly v. Lamm, 704 P.2d 1371 (Colo. 1985); Brault v.Holleman, 217 Va. 441, 230 S.E.2d 238 (1976). That definition comports with the definition of "to appropriate" as defined by the Nebraska Supreme Court. State ex rel. Norfolk Beet-Sugar Company v. Moore,50 Neb. 88, 69 N.W. 373 (1896). It also comports generally with the requirements for a valid appropriation under Neb. Rev. Stat. § 49-804
(1998). In that context, the "earmarking" amounts which were vetoed by the Governor in Section 44 of LB 543 appear to be "items" of appropriation which might be vetoed by the Governor in that they state that a specific sum of money should be used for a stated purpose.
As a result, in the absence of any clear Nebraska law, we believe that application of the Brady "lump sum" rule is appropriate under the circumstances set out in your opinion request. That brings us to your ultimate question as to what should be printed in the slip law.
It appears clear from the Governor's veto procedures regarding the earmarking items at issue that he did not wish to eliminate all appropriations for the programs named therein. He did not place a zero above the items when he crossed them out, and his reduction and veto for the entire Program 25 contained in Section 44 of LB 543 was for an amount less than the amounts of the earmarked items which he vetoed. On that basis you could print the slip law with the language of the earmarked sections intact, minus any number amount, based upon the fact that only the number amount in the earmarked section was vetoed by the Governor. The propriety of that course of action, it seems to us, is dependent upon whether any appropriation still exists for the purposes set out in the earmarked sections.
In Green v. Rawls, 122 So.2d 10 (Fla. 1960) the governor of Florida vetoed specific sums for salaries of officials set out within a general appropriation for salaries because those salaries were, in his view, too low. The court ultimately held that those same officials could be paid a larger salary than the specific sum originally vetoed by the governor in part because the general appropriation for salaries was undiminished by the governor's veto action with respect to the specific sums within the larger appropriation. Similarly, in Reardon v. Riley, 10 Cal.2d 531,76 P.2d 101 (1938), the Governor of California vetoed items within an appropriation to the Department of Industrial Relations which provided that specific portions of the total appropriation should be expended as therein designated because the governor considered the Department of Industrial Relations better equipped to make the allocations at issue. The court held that those vetoes eliminated the specific items at issue, but did not affect the overall appropriation to the Department. See also
Op. Att'y Gen. No. # 14 (January 28, 1981) (Veto of earmarked amounts by the Governor left total appropriation available for any of the authorized purposes of the fund.).
In the present instance, it appears to us, based upon the authorities discussed in the previous paragraph, that the general appropriation for Program 25 set out at the beginning of Section 44 is undiminished by the Governor's vetoes of earmarked amounts. As a result, a general appropriation in the reduced amounts approved by the Governor (GENERAL FUND of 811,218,432 for FY2001-02 and 839,912,645 for FY2002-03, together with a PROGRAM TOTAL of 989,538,408 for FY 2001-02 and 1,020,020,695 for FY 2002-03) still exists for expenditures within the purposes of Program 25. Since we assume that the various earmarked amounts within Program 25 are permitted within that program, it appears to us that an appropriation still exists for the earmarked items which the Governor vetoed. For that reason, we believe that it is appropriate for you to print the slip law with the language of the earmarked sections intact, minus the number amount excised by the Governor.
 Sincerely yours, DON STENBERG
 Attorney General Dale A. Comer Assistant Attorney General
[1] That constitutional provision provides, as is pertinent:
 Every bill passed by the Legislature, before it becomes a law, shall be presented to the Governor. If he approves he shall sign it, and thereupon it shall become a law, but if he does not approve or reduces any item or items of appropriations, he shall return it with his objections to the Legislature, which shall enter the objections at large upon its journal, and proceed to reconsider the bill with the objections as a whole, or proceed to reconsider individually the item or items disapproved or reduced. . . . The Governor may disapprove or reduce any item or items of appropriation contained in bills passed by the Legislature, and the item or items so disapproved shall be stricken therefrom, and the items reduced shall remain as reduced unless the Legislature has reconsidered the item or items disapproved or reduced and has repassed any such item or items over the objection of the Governor by a three-fifths approval of the members elected.
[2] "Log rolling" involves the practice of jumbling together incongruous subjects in one legislative act in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits. Colorado GeneralAssembly v. Lamm, 704 P.2d 1371, 1383 (Colo. 1985).
[3] The cases which follow the Brady "lump sum" rule do differ from the present circumstance in one respect. The state constitutions at issue in those various cases all contain some language to the effect that those items of an appropriation which are approved by the governor apart from the line-item vetoes shall become law. Art. IV, § 15 of the Nebraska Constitution does not contain such additional "approval" language. We do not believe this constitutes a significant difference.